COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-024-CV

RAUL DURAN APPELLANT

V.

FORT WORTH INDEPENDENT APPELLEE

SCHOOL DISTRICT

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Raul Duran appeals from a summary judgment rendered for appellee Fort Worth Independent School District (FWISD) 
on 
Duran’s Whistleblower Act claim.
  In six issues, Duran complains that the trial court improperly granted summary judgment.  We affirm.

Duran 
sued FWISD, claiming that it retaliated against him for reporting violations of law 
by refusing to assign him to a position that he wanted and instead assigning him to a less desirable one.
  
FWISD moved for summary judgment on both traditional and no evidence grounds, and the trial court granted summary judgment without specifying the ground or grounds relied on.  We will, therefore, affirm the summary judgment if any of the theories presented to the trial court and preserved for our review are meritorious.
(footnote: 2) 
 

We turn first to FWISD’s traditional motion for summary judgment.  A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.
(footnote: 3)  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.
(footnote: 4)  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
(footnote: 5) 
  

The Texas Whistleblower Act provides that “[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.”
(footnote: 6) 
 One of FWISD’s grounds for traditional summary judgment was that Duran’s reassignment was a purely lateral transfer and not an “adverse personnel action” as a matter of law.  
 We agree.

“Personnel action” is defined in the Act as “an action that affects a public employee’s compensation, promotion, demotion, transfer, work assignment, or performance evaluation.”
(footnote: 7)  Although the Act does not define “adverse,” the Texas Supreme Court recently held that “a personnel action is adverse within the meaning of the Whistleblower Act if it would be likely to dissuade a reasonable, similarly situated worker from making a report under the Act.”
(footnote: 8) 

In 2003, FWISD reorganized its “Improvement of Discipline and Learning Environment Department” where Duran, a long-time employee, was one of approximately forty “prevention/intervention specialists.”  
After the reorganization, Duran’s position was split into two distinct positions: prevention education specialist and intervention specialist.  FWISD
 decided to require each new intervention specialist to be licensed as either a chemical dependency counselor, professional counselor, or social worker.
(footnote: 9) 
 
Some of the former prevention/intervention specialists held one of these licenses, but Duran did not. FWISD structured the reorganization so that none of the prevention/intervention specialists would lose their employment, pay grade, or salary level.  It 
permitted the former prevention/intervention specialists to indicate their preference between the two new positions and implemented a one-time grandfathering process by which unlicensed prevention/intervention specialists who desired to become intervention specialists could interview for those positions not filled by the licensed employees.  Duran 
was one of nine unlicensed prevention/intervention specialists to interview for six intervention specialist positions, but he did not score among the top six candidates in the panel interview and was, therefore, assigned to be a prevention education specialist. 

The duties of the two new positions differed from each other, but each involved on a full-time basis some of the duties previously assigned to the prevention/education specialists.
  
Intervention specialists are “troubleshooters” who work in social and behavioral intervention at one or two secondary schools and interact with students, parents, school psychologists, and teachers.  Prevention education specialists serve kindergarten through twelfth grades at several schools (nine, in Duran’s case)
 by conducting classroom presentations from a set curriculum on topics such as drugs and violence.

FWISD presented summary judgment proof to establish that Duran’s reassignment to prevention education specialist was a lateral transfer from the original position and was not an adverse personnel action.
  Charles Hoffman, FWISD’s executive director of student and social services, testified by affidavit that the position of prevention education specialist was a lateral reassignment from the original, combined position.  Hoffman and Leslie James, assistant superintendent of special services,
 both testified that the two new positions were lateral to each other and equal in compensation and stature.  Further, five of the licensed former prevention/intervention specialists chose to become prevention education specialists even though they could have qualified to be intervention specialists without interviewing.
  And
 Duran admitted that his salary remained the same and that there was no difference in pay or benefits between the intervention and prevention education specialists.
(footnote: 10)
 This evidence was sufficient to establish FWISD’s right to summary judgment.  Thus, the burden shifted to Duran to bring forth “competent controverting evidence raising a genuine issue of material fact” with regard to the adverse personnel action element.
(footnote: 11)
 Duran’s own assertions were the only summary judgment evidence indicating that his assignment to be a prevention education specialist was an adverse personnel action.  
In his deposition and original grievance, Duran claimed that the prevention education specialist position was “less challenging” than his original position and there was “more discretion” and “prestige” in the intervention specialist position.
  He further asserts that his assignment to prevention education specialist involved “more menial responsibilities” and “less opportunity to promote” than the intervention specialist position.  
Duran, however, did not proffer the affidavit or deposition testimony of any witnesses other than himself.

  
 
Although a transfer or reassignment without a cut in pay may be an adverse personnel action in appropriate circumstances,
(footnote: 12) a
n employee’s 
subjective belief that retaliation has occurred is generally insufficient to raise a fact issue.
(footnote: 13) 
 
T
o constitute an adverse personnel action under the Act, a “plaintiff must show that he has suffered some serious,
 
objective, and tangible harm as a result of his transfer. . . . [and] personal preferences and subjective perceptions of the plaintiff are insufficient.”
(footnote: 14)  Further, Duran’s subjective beliefs do not bear on whether the transfer would be likely to dissuade a reasonable, similarly situated worker from making a report.
(footnote: 15)  
Duran’s subjective assertions that his reassignment was an adverse personnel action are, therefore, insufficient to raise a fact issue on the adverse personnel action element.
(footnote: 16)
 Duran also testified that two co-workers, Petra Jimenez (an original co-complainant but not a party in the trial court) and an unnamed male prevention education specialist, believed that the prevention specialists had a lower status. 
Conclusory statements of others’ beliefs, unsupported by facts, are not proper summary judgment proof.
(footnote: 17) 
 This evidence, therefore, also does not raise a genuine issue of material fact on the challenged element.

Duran further argues that because the intervention specialist position had higher qualifications than the prevention education specialist position, it was more prestigious.  The relevant comparison, however, when determining whether Duran’s reassignment was an adverse employment action, is the difference between Duran’s original position and the position to which he was reassigned.
(footnote: 18)  Duran does not argue, and we have found no evidence in the record to suggest, that the new prevention education specialist position required fewer qualifications than the original, combined position.

For all of these reasons, we hold that FWISD conclusively negated the adverse personnel action element of Duran’s cause of action and the trial court properly granted summary judgment.  Accordingly, we overrule Duran’s fourth issue, which is dispositive of the appeal, and affirm the trial court’s judgment.
(footnote: 19)  

PER CURIAM

PANEL A:  CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

DELIVERED:  February 21, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
,
 e.g.
,
 Provident Life & Accident Ins. Co. v. Knott
, 128 S.W.3d 211, 216 (Tex. 2003).  

3:
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004); 
see
 
Tex. R. Civ. P.
 166a(b), (c).  

4:
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).

5:
IHS Cedars Treatment Ctr.
, 143 S.W.3d at 798.

6:
Tex. Gov’t Code Ann.
 § 554.002(a) (Vernon 2004).

7:
Id.
 §
 554.001(3) (Vernon 2004). 

8:
Montgomery County, Tex. v. Park
, 51 Tex. Sup. Ct. J. 160, 2007 WL 4216605, at *2–3 (Tex. Nov. 30, 2007) (adopting with appropriate modifications the standard set out in 
Burlington N. & Santa Fe Ry. Co. v. White
, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006)).

9:
In his oral deposition, Duran agreed that it was appropriate for a division to be made between the two positions and did not quarrel with the requirement that, generally, intervention specialists should be licensed.

10:
In his brief, Duran claims that while his salary remained the same, he “lost certain financial benefits” as a result of the reassignment.  However, he cites no evidence to support this proposition, and, in his deposition, he conceded that there was no difference in benefits.

11:
Provident Life & Accident Ins. Co.
, 128 S.W.3d at 216.

12:
See
 
Montgomery County
, 2007 WL 4216605, at *3–4; 
Serna v. City of San Antonio
, 244 F.3d 479, 482 (5th Cir. 2001)
. 

13:
See
, 
e.g.
, 
Breaux v. City of Garland
, 205 F.3d 150, 160 (5th Cir. 2000); 
M.D. Anderson Hosp. & Tumor Inst. v. Willrich
, 28 S.W.3d 22, 25 (Tex. 2000); 
Elgaghil v. Tarrant County Junior Coll.
, 45 S.W.3d 133, 141 (Tex. App.—Fort Worth 2000, pet. denied).

14:
Serna
, 244 F.3d at 483.  The 
Serna
 court defined “adverse personnel action” under the Act by citing cases interpreting that element under a § 1983 cause of action.  
Id
.  Because both Duran and FWISD urge us to consider cases interpreting § 1983, we may rely on 
Serna
’s holding despite the difference, if any, between the adverse personnel action elements of the Whistleblower Act and § 1983.  
Id.
 

15:
See Montgomery County
, 2007 WL 4216605, at *2–3.

16:
The cases that Duran cites in support of his position that his reassignment was an adverse personnel action are distinguishable.  In 
City of Fort Worth v. Zimlich
, the supreme court did not address the issue of whether the plaintiff’s reassignment constituted an adverse employment action
.  
29 S.W.3d 62, 69 (Tex. 2000).  
Zimlich
 was also decided under an earlier version of the Whistleblower Act that made any form of discrimination actionable.  
Id.
 at 67.  Further, the lower court’s published opinion in 
Zimlich
 reveals that evidence showed that “experienced employees regarded the post as humiliating work or as ‘punishment’ duty.”  
City of Fort Worth v. Zimlich
, 975 S.W.2d 399, 406 (Tex. App.—Austin 1998), 
rev’d in part by
 29 S.W.3d 62 (Tex. 2000).  
In three other cases that Duran relies on, objective evidence—including testimony from witnesses other than the plaintiff—demonstrated that the plaintiff’s post-transfer position was objectively worse than his original position.
  Click
 v. Copeland
, 970 F.2d 106, 110 (5th Cir. 1992)
; 
Allison v. Tarrant County
, 
92 F. Supp. 2d 601, 605 (N.D. Tex. 2000); 
Tex. Dep’t of Mental Health & Mental Retardation v. Rodriguez
, 63 S.W.3d 475, 480–81 (Tex. App.—San Antonio 2001, pet. denied).  
No such evidence exists here.

17:
See Purcell v. Bellinger
, 940 S.W.2d 599, 602 (Tex. 1997).

18:
See
,
 e.g.
, 
Serna
, 244 F.3d at 484–85. 

19:
See 
Tex. R. App. P.
 47.1.